Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9662
Facsimile: (310) 595-9501

*Attorneys for Defendant*
*Walgreen Co.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

N.G., R.L., R.S., and I.P., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

WALGREEN CO.,

Defendant.

Case No. 3:26-cv-02994-RS

Assigned to: Hon. Richard Seeborg

**DEFENDANT WALGREEN CO.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[*Filed concurrently with Declaration of V. Parekh and [Proposed Order]*]

Date: July 16, 2026
Time: 1:30 p.m.
Location: Courtroom 12, 19th Floor

CLASS ACTION

**TO THE COURT, AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on July 16, 2026, at 1:30 p.m., defendant Walgreen Co. ("Walgreen") will bring for hearing this Motion to Compel Arbitration, before the Honorable Judge Richard Seeborg, located at San Francisco Courthouse, Courtroom 12, 450 Golden Gate Avenue, San Francisco, CA 94102.

Walgreen hereby moves the Court for an Order granting Walgreen's Motion to Compel Arbitration for all claims in Plaintiffs N.G., R.S., R.L. and I.P.'s Amended Class Action Complaint (the "Complaint") (ECF No. 18) pending pursuant to Federal Rule of Civil Procedure 12 and the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and for an order staying all proceedings in this action pending conclusion of the arbitration.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Vishal Parekh and any exhibits attached thereto, all pleadings, papers, and records on file herein, all matters upon which judicial notice may be taken, any oral argument that may be presented at the hearing, and upon such other matters the Court deems just and necessary.

DATED: June 9, 2026

SIDLEY AUSTIN LLP

By: ______________________

Amy P. Lally

*Attorneys for Defendant Walgreen Co.*

# TABLE OF CONTENTS


**Page**

INTRODUCTION ....... 1

BACKGROUND ....... 1

I. PLAINTIFFS AGREED TO ARBITRATE "ANY DISPUTE, CLAIM, OR CONTROVERSY" WITH WALGREEN. ....... 1

A. R.L. and I.P. ....... 1

B. N.G. and R.S. ....... 3

II. PLAINTIFFS SUED WALGREEN DESPITE AGREEING TO MANDATORY ARBITRATION. ....... 5

LEGAL STANDARD ....... 5

ARGUMENT ....... 6

I. PLAINTIFFS AGREED TO THE TERMS OF USE, WHICH INCLUDED AN AGREEMENT TO ARBITRATE DISPUTES. ....... 7

A. R.L. and I.P. ....... 8

B. N.G. and R.S. ....... 9

II. THE SCOPE OF THE ARBITRATION AGREEMENT IS RESERVED FOR THE ARBITRATOR, BUT ENCOMPASSES PLAINTIFFS' CAUSES OF ACTION IN ALL EVENTS. ....... 11

III. THE COURT SHOULD STAY THIS CASE PENDING RESOLUTION OF THE ARBITRATION. ....... 13

CONCLUSION ....... 14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Aanderud v. Superior Court*,
13 Cal. App. 5th 880 (2017) .....11

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011).....5, 6, 7

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .....7, 8

*Blau v. AT&T Mobility*,
No. C 11-00541, 2012 WL 10546 (N.D. Cal. Jan. 3, 2012) .....6

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .....6

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .....7

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003).....6

*Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*,
83 Cal. App. 4th 677 (2000), *as modified* (Sept. 7, 2000) .....13

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985).....6, 7

*Dickey v. Ticketmaster LLC*,
No. CV 18-9052, 2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) .....9

*Estrella v. Freedom Fin.*,
No. C 09-03156, 2011 WL 2633643 (N.D. Cal. July 5, 2011).....13

*Graf v. Match.com, LLC*,
No. 15-CV-3911, 2015 WL 4263957 (C.D. Cal. July 10, 2015).....9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019).....6, 11, 12

*Holl v. United Parcel Serv., Inc.*,
No. 16-CV-05856, 2017 WL 11520143 (N.D. Cal. Sept. 18, 2017) .....8, 10

*Kahl v. Plentyoffish Media ULC*,
No. 23-cv-00985, 2023 U.S. Dist. LEXIS 103055 (N.D. Cal. June 13, 2023).....11

*Keebaugh v. Warner Bros. Entertaiment Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 7

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011) .......... 7

*Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*,
186 Cal. App. 4th 696 (2010) .......... 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 12

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 8

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 7, 8, 10

*Ortiz v. Univ. Credit Union*,
2025 WL 3765497 (9th Cir. Dec. 30, 2025) .......... 10

*Rodriguez v. Am. Techs., Inc.*,
136 Cal. App. 4th 1110 (2006) .......... 11

*Rowe v. Exline*,
153 Cal. App. 4th 1276 (2007) .......... 7

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) .......... 6

*Smith v. Spizzirri*,
601 U.S. 472 (2024) .......... 6, 13

*Vianna v. Doctors' Mgmt. Co.*,
27 Cal. App. 4th 1186 (1994) .......... 12

**Statutes**

Cal. Penal Code §§ 638.50, 638.51 .......... 5

California Constitution Article I, § 1 .......... 5

California Evidence Code § 452(g) and (h) .......... 12

Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502, et seq .......... 5

Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), et seq. .......... 5

Federal Arbitration Act, 9 U.S.C. § 1 et seq. .......... *passim*

Medical Information Act, Cal. Civil Code §§ 56, et seq. ....................5

Privacy Act, Cal. Penal Code § 631, 632....................5

Federal Rule of Civil Procedure 12 ....................1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiffs R.L., I.P., R.S., and N.G. ("Plaintiffs") have filed their claims in the wrong forum. Plaintiffs R.L. and I.P. entered into binding arbitration agreements with Defendant Walgreen Co. ("Walgreen") when they made vaccination appointments using Walgreen's website by affirmatively agreeing to Walgreen's terms of use, including to "binding individual arbitration" of "any dispute, claim, or controversy" between themselves and Walgreen. Declaration of Vishal Parekh ("Parekh Decl."), Ex. B at 2 Similarly, Plaintiffs R.S. and N.G. entered into binding arbitration agreements with Walgreen when they created digital accounts through walgreens.com by affirmatively agreeing to Walgreen's terms of use, including to "binding arbitration" of any and all disputes, claims, or controversies between themselves and Walgreen. *Id.*, Ex. D at 8, Ex. E at 4. The existence of a valid arbitration agreement is dispositive and requires that the Motion be granted upon that finding alone, because the parties' agreement delegates all issues concerning arbitrability to the arbitrator. If the Court nonetheless seeks to decide whether the parties' arbitration agreement applies to the current dispute (and it should not), the broad language of the arbitration agreement—"any dispute, claim, or controversy"—clearly encompasses Plaintiffs' claims. Plaintiffs' attempt to circumvent the parties' mandatory arbitration agreement must fail; this dispute belongs in arbitration and this action must be stayed in the interim.

**BACKGROUND**

**I. PLAINTIFFS AGREED TO ARBITRATE "ANY DISPUTE, CLAIM, OR CONTROVERSY" WITH WALGREEN.**

**A. R.L. and I.P.**

Plaintiffs R.L. and I.P. agreed to arbitrate any dispute with Walgreen when they scheduled their vaccination appointments online. Plaintiffs allege that they used Walgreen's online scheduling platform in September 2024 to book vaccine appointments. Amended Class Action Complaint (the "Complaint" or "Compl.") (ECF No. 18) ¶¶ 180, 192. As part of the scheduling process, Plaintiffs R.L. and I.P. were required to affirmatively accept Walgreen's Terms of Use before they could proceed. Parekh Decl. ¶ 7, Ex. A. The webpage displayed a checkbox accompanied by the statement: "By checking this box, I agree

to receive automated text messages . . . I also agree to the Walgreens Terms of Use and Privacy Policy." *Id.*. The phrases "Terms of Use" and "Privacy Policy" appeared in blue, underlined text distinguishing them from the surrounding black text and indicating that they were hyperlinks. *See id.*, Ex. A. The assent language and corresponding checkbox appeared immediately before the "Next" button required to proceed with scheduling, and users could not continue the online scheduling process unless they first checked the box indicating agreement. *Id.* By voluntarily clicking the box, Plaintiffs R.L. and I.P. agreed to Walgreen's Terms of Use in effect in September 2024 (the "2024 Terms"). *Id.*

The first full paragraph of the 2024 Terms prominently advised Plaintiffs—in all capitalized letters—that the agreement contained a mandatory arbitration provision and class action waiver. Specifically, the 2024 Terms stated:

> IMPORTANT ARBITRATION NOTICE: PLEASE READ THIS CAREFULLY AS IT AFFECTS YOUR RIGHTS. THESE TERMS AND CONDITIONS CONTAIN A MANDATORY ARBITRATION CLAUSE AND A CLASS ACTION/JURY TRIAL WAIVER, REQUIRING ANY DISPUTE BETWEEN YOU AND WALGREENS, SUBJECT TO LIMITED EXCEPTIONS, TO BE RESOLVED BY FINAL AND BINDING INDIVIDUAL ARBITRATION AND REQUIRING YOU TO FOREGO JURY TRIALS, CLASS OR COLLECTIVE ACTIONS OR PROCEEDINGS, AND ALL OTHER TYPES OF COURT PROCEEDINGS OF ANY KIND.

Parekh Decl., Ex. B at 1.

The second paragraph of the 2024 Terms further advised users that the Terms constituted a binding agreement governing use of Walgreen's online services:

> These Terms govern your use of the online services provided by Walgreen Co. and its affiliates ("Walgreens," "us," or "we"), including websites, mobile applications, photo services, Rx reminders, in-store wifi, Walgreens Content (as defined in Section III), and other services ("Services"). These Terms act as a binding agreement between you and us, and by accessing any Services in any way, you agree to be bound by all of them, including, but not limited to, **resolving disputes via binding individual arbitration**, conducting this transaction electronically, disclaiming warranties, damage and remedy exclusions and limitations, and a choice of **Illinois law**.

*Id.*

The arbitration provision itself appeared under a separate bolded heading—"**Dispute Resolution:**

**Binding Individual Arbitration & Waiver of Class/Representative Actions and Jury Trials (‘Agreement to Arbitrate’)**”—set apart from surrounding text in a larger font. The section began by stating in bold text that **“[t]he informal resolution and binding individual arbitration requirements in this Section II apply to all Disputes between you and Walgreens.”** The 2024 Terms broadly defined Dispute:

> **“Dispute”** means any dispute, claim, or controversy . . . between you and Walgreens, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, that either party seeks legal recourse for, and irrespective of whether the Dispute relates to the Services or to your experiences in or purchases from any Walgreens physical store. . . . **A Dispute is subject to this Agreement to Arbitrate, whether it arose before, on, or subsequent to you entering these Terms, and if not resolved through the informal dispute resolution procedure outlined below, shall be exclusively resolved by individual, binding arbitration in accordance with this Agreement to Arbitrate.**

*Id.* at 2.

The section further specifies that the parties’ agreement to arbitrate is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (“FAA”) and that arbitration shall be conducted by National Arbitration and Mediation (“NAM”). *Id.* at 3. Finally, the Agreement to Arbitrate explains that Plaintiffs may “choose to reject” the arbitration agreement by opting out as described therein. Plaintiffs did not opt out. *Id.* at 6.

**B. N.G. and R.S.**

Plaintiff R.S. alleges that he booked his vaccine appointment on Walgreen’s online scheduling platform in November 2021. Compl. ¶ 186. Before scheduling his appointment, R.S. agreed to arbitrate disputes with Walgreen when he created a walgreens.com account on February 24, 2021. Parekh Decl. ¶ 9. When R.S. created his walgreens.com account, he affirmatively agreed to Walgreen’s Terms of Use in effect at the time. Parekh Decl. ¶¶ 11–12. During the account-creation process, users were required to check a box stating, “I read and agree to the Walgreens Terms of Use,” before they could click “Continue” to create an account. *Id.*, Ex. C. The phrase “Terms of Use” appeared in blue, underlined text distinguishing it from the surrounding text and signaling that it was a hyperlink to the governing terms. *Id.*, Ex. C. The assent language appeared immediately adjacent to the required checkbox, and the

"Continue" button appeared directly below it. *Id.* Users could not proceed with account creation unless they first checked the box indicating agreement to the Terms of Use. *Id.* ¶ 12. By creating a walgreens.com account, R.S. necessarily accepted Walgreen's Terms of Use in effect on February 24, 2021 (the "2021 Terms").

Like R.S., N.G. agreed to arbitrate disputes with Walgreen when she created a walgreens.com account on December 18, 2018. *Id.* ¶ 10. Consistent with the 2021 digital account creation process, N.G. was required to affirmatively check a box stating "I read and agree to the Walgreens Terms of Use," before she could click "Continue" to create an account. *Id.* ¶¶ 12, 15. The Terms of Use appeared equally conspicuous in the 2018 digital account creation as in 2021. *Id.* ¶ 15. By creating a walgreens.com account, N.G. necessarily and voluntarily clicked the box, agreeing to the Terms of Use in effect on December 18, 2018 (the "2018 Terms").

Just like the 2024 Terms, the 2018 Terms and 2021 Terms include a conspicuous and binding arbitration clause. The Terms begin by stating that "These Terms act as a binding agreement between you and us, and by accessing any Services in any way, you agree to be bound by all of them, including, but not limited to, **resolving disputes via binding arbitration**." *Id.*, Exs. D & E at 1. Both Terms define "Services" broadly as online services provided by Walgreen. *Id*. The arbitration provisions are identical in 2018 and 2021—appearing under a separate heading—"VII. Dispute Resolution"—set apart from surrounding text in larger font. *Id.*, Ex. D at 8, Ex. E at 4. The section explains:

> If we cannot resolve the matter informally, you and we each agree that any and all disputes or claims that have arisen or may arise between you and us shall be resolved exclusively through final and binding arbitration, rather than in court, except that you may assert claims in small claims court, if your claims qualify ("Agreement to Arbitrate").

*Id.*

The section in the 2018 Terms and 2021 Terms further specifies that the parties' agreement to arbitrate is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA") and that arbitration shall be conducted by the American Arbitration Association ("AAA"). *Id.* Finally, the section explains that consumers may "choose to reject" the arbitration agreement by opting out as described therein. Parekh Decl., Ex. D at 9, Ex. E at 5. Neither N.G. nor R.S. opted out. *Id.* ¶ 17.

## II. PLAINTIFFS SUED WALGREEN DESPITE AGREEING TO MANDATORY ARBITRATION.

Despite having agreed to arbitrate disputes and to a class-action waiver, on or around April 17, 2026, Plaintiffs filed their Amended Class Action Complaint against Walgreen. *See generally* Compl. On behalf of themselves and a putative class, Plaintiffs assert thirteen causes of action: (i) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1), et seq.; (ii) invasion of privacy – public disclosure of private facts under Illinois law; (iii) invasion of privacy – public disclosure of private facts under California law; (iv) invasion of privacy – intrusion upon seclusion under California law; (v) violation of California Constitution Article I, § 1; (vi) Negligence under Illinois law; (vii) Negligence under California law; (viii) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631; (ix) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 632; (x) violation of Cal. Penal Code §§ 638.50, 638.51; (xi) violation of the Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502, et seq.; (xii) violation of the California Confidentiality of Medical Information Act, Cal. Civil Code §§ 56, et seq.; and (xiii) unjust enrichment. *See id.*

Plaintiffs' claims are all premised on Walgreen's alleged capture and transmittal of information allegedly obtained through Walgreen's website practices. *See id.* ¶¶ 1–14. Plaintiffs' causes of action are brought on behalf of themselves, a Nationwide Class consisting of "[a]ll individuals residing in the United States who used Defendant's Website to make a vaccine appointment," and a California Subclass consisting of "[a]ll individuals residing in the State of California who used Defendant's Website to make a vaccine appointment" (collectively, the "Class"). *Id.* ¶ 212.

Based on these allegations, Plaintiffs seek actual, consequential, statutory, punitive, and nominal damages, injunctive relief, an award of attorneys' fees, and prejudgment interest. *Id.* Prayer For Relief.

## LEGAL STANDARD

Section 2 of the FAA provides that an arbitration agreement provision in any contract involved in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011). The FAA applies to any arbitration agreement that is "written" and that is in a

contract evidencing "a transaction involving commerce." 9 U.S.C. § 2; *see Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("[T]he term 'involving commerce' in the FAA [is] the functional equivalent of the more familiar term 'affecting commerce'–words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power."). Once a court determines that the parties to a litigation agreed to arbitrate, the FAA gives the court no discretion; rather, it must compel the parties to arbitrate and stay the action pending the outcome. See *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

While under the FAA courts ordinarily determine whether a dispute falls within the scope of an arbitration provision, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also . . . 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68 (2019) (cleaned up). In such cases, the court looks to whether the parties "clearly and unmistakably" gave such authority to the arbitrator. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Schein*, 586 U.S. at 67–68. Where an arbitration agreement "delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Schein*, 586 U.S. at 69; *Brennan*, 796 F.3d at 1130.

When parties enter into an arbitration agreement and one party fails to comply, the aggrieved party may petition the court "for an order directing that such arbitration proceed in the manner provided in such agreement." 9 U.S.C. § 4. "[U]pon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* The burden then shifts to the party opposing arbitration to put "the making of that agreement 'in issue.'" *Blau v. AT&T Mobility*, No. C 11-00541 CRB, 2012 WL 10546, at *3 (N.D. Cal. Jan. 3, 2012) (citation omitted).

**ARGUMENT**

In California, "the standard for demonstrating arbitrability is not high," and arbitration agreements "are to be rigorously enforced." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). Arbitration agreements are rigorously enforced because both federal and California law strongly favor arbitration as

a matter of public policy. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Rowe v. Exline*, 153 Cal. App. 4th 1276, 1288 (2007). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC*, 563 U.S. at 344. As a result, the "emphatic federal policy in favor of arbitral dispute resolution," reflected by the FAA, "requires courts to enforce the bargain of the parties to arbitrate." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).

To determine if a dispute is subject to arbitration, the court must decide two issues: (1) "whether a valid arbitration agreement exists" between the parties; and (2) "whether the agreement encompasses the dispute at issue." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 510 (9th Cir. 2023) (quoting *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004)). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

## I. PLAINTIFFS AGREED TO THE TERMS OF USE, WHICH INCLUDED AN AGREEMENT TO ARBITRATE DISPUTES.

Federal courts apply state-law principles of contract formation in determining whether parties have agreed to arbitrate a particular dispute. *Keebaugh v. Warner Bros. Entertaiment Inc.*, 100 F.4th 1005, 1013-14 (9th Cir. 2024). "To form a contract under California law, there 'must be actual or constructive notice of the agreement and the parties must manifest mutual assent.'" *Id.* at 1013–1014 (quoting *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023)). Consumer arbitration agreements come in various forms: some require the consumer to check or tap an "I agree" box or scroll through the agreement itself; and some make the terms available through hyperlinks proximate to a purchase button, with instructions that submitting the transaction constitutes assent to the terms. *Berman v. Freedom Fin. Network, LLC,* 30 F.4th 849, 856 (9th Cir. 2022). All of these are potentially valid, so long as (1) "a notice [is] displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it;"; and (2) "[a] user's click of a button can be construed

as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Oberstein*, 60 F.4th at 515 (quoting *Berman*, 30 F.4th at 857); *See also Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1176-1177 (9th Cir. 2014) (noting that clickwrap agreements, which require affirmative acknowledgement, are generally enforceable). Here, each plaintiff, whether through scheduling a vaccination or by creating a walgreens.com account, manifested their assent to Walgreen's Terms.

**A. R.L. and I.P.**

Plaintiffs R.L. and I.P. manifested their assent to Walgreen's Terms by consenting to the 2024 Terms of Use when scheduling their respective vaccine appointments. When creating the vaccine appointment, they were required to manifest their assent to Walgreen's Terms of Use before proceeding. Parekh Decl. ¶ 7. Courts routinely find that a "user's click of a button can be construed as an unambiguous manifestation of assent [] if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Oberstein*, 60 F.4th at 515 (quoting *Berman*, 30 F.4th at 857). Likewise, checking a box next to a statement indicating agreement to the terms is sufficient to manifest assent. *See Holl v. United Parcel Serv., Inc.*, No. 16-CV-05856-HSG, 2017 WL 11520143, at *4–5 (N.D. Cal. Sept. 18, 2017) (by checking a box, "Plaintiff unequivocally represented" that he was on inquiry notice of the terms "regardless of whether he actually read" them). Here, directly above the "Next" button, the webpage states: "I also agree to the Walgreens Terms of Use and Privacy Policy," with the "Terms of Use" presented as a hyperlink underlined and printed in blue font in contrast to the black font of the surrounding text. *See* Parekh Decl., Ex. A. The user cannot continue to schedule the appointment without checking the box. *Id.* ¶ 7, Ex. A The disclosure appears immediately adjacent to the "Next" button used to continue the transaction, placing the user on clear notice that proceeding with the vaccination scheduling process constitutes agreement to those terms. *Id.*, Ex. A.

Numerous courts within this circuit have found notices similar to those displayed here—with a hyperlink to the terms and conditions in a different color from the other text, located within close proximity to a button or checkbox customers must click to continue—sufficiently conspicuous. *See, e.g., Oberstein*, 60 F.4th at 515–16 (notice conspicuously displayed where the "Terms of Use" hyperlink was distinguished

from the surrounding text in blue font, located "directly above or below an action button"); *Dickey v. Ticketmaster LLC*, No. CV 18-9052-GW, 2019 WL 9096443, at *6 (C.D. Cal. Mar. 12, 2019) (notice was held to be sufficiently conspicuous where the word "Terms" was hyperlinked in blue font directly above a "Sign Up" button, while other text was in dark gray font); *Graf v. Match.com, LLC*, No. 15-CV-3911-PA, 2015 WL 4263957, at *4 (C.D. Cal. July 10, 2015) (compelling arbitration where user was "required to affirmatively agree to the Terms of Use when they clicked on a 'Continue' or other similar button").

As set forth above, Walgreen's 2024 Terms of Use contain an unambiguous agreement to arbitrate. *See supra* Background § A.i. Specifically, and in addition to several other disclosures about the arbitration agreement at the beginning of Walgreen's terms, the "Dispute Resolution: Binding Individual Arbitration & Waiver of Class/Representative Actions and Jury Trials ('Agreement to Arbitrate')" section of the 2024 Terms state that "[t]he informal resolution and binding individual arbitration requirements in this Section II apply to all Disputes between you and Walgreens." Parekh Decl., Ex. B at 2. Plaintiffs did not opt out of the 2024 Terms, and instead accessed Walgreen's services by scheduling an appointment online, after checking the box indicating their consent. Moreover, "any dispute, claim, or controversy . . . between [Plaintiffs] and Walgreens" remains "subject to this Agreement to Arbitrate, whether it arose before, on, or subsequent to [Plaintiffs] entering these Terms." *Id.*

Ultimately, the arbitration agreement in the 2024 Terms is sufficiently conspicuous to put reasonable consumers, like Plaintiffs, on notice of the agreement to arbitrate and Plaintiffs provided their consent thereto. Accordingly, Plaintiffs I.P. and R.L. entered into a binding agreement to arbitrate their claims.

**B. N.G. and R.S.**

Plaintiffs N.G. and R.S. manifested their assent to Walgreen's Terms, which included an arbitration agreement, by creating a walgreens.com account on December 18, 2018 and on February 24, 2021, respectively, prior to scheduling their vaccine appointments in November 2021 and May 2022. Walgreen required users creating digital accounts to affirmatively assent to the Terms of Use by selecting a checkbox stating, "I read and agree to the Walgreens Terms of Use," before clicking "Continue" to proceed with account creation. Parekh Decl. ¶ 11–12, Ex. C. Plaintiffs could not create a Walgreens.com

account or access Walgreen's online services without first manifesting assent to the 2018 or 2021 Terms. *Id.* Plaintiffs' actions constitute a classic clickwrap agreement routinely enforced under California law. *See Holl v. United Parcel Serv., Inc.*, No. 16-cv-05856-HSG, 2017 WL 11520143, at *1, *3, *5 (N.D. Cal. Sept. 18, 2017) (enforcing arbitration agreement where plaintiff was required to check a box adjacent to hyperlinked terms before proceeding, regardless of whether plaintiff actually read the terms); *see also Ortiz v. Univ. Credit Union*, 2025 WL 3765497, at *2–3 (9th Cir. Dec. 30, 2025) (remanding case to district court to stay the matter and compel arbitration after finding assent where users were required to check a box acknowledging a member agreement before clicking an "Agree" button).

The Walgreen account-creation page, whether in 2018 or 2021, also provided reasonably conspicuous notice of the Terms. Like on the vaccine scheduling webpage, the sentence "I read and agree to the Walgreens Terms of Use" hyperlinked the arbitration terms [in both 2018 and 2021] using blue, underscored text, and distinguished from the surrounding black and gray text on an uncluttered screen. Parekh Decl. ¶¶ 13, 15, Ex. C. *See Oberstein*, 60 F.4th at 516. The checkbox assent mechanism was positioned directly above the "Continue" button and visually separated from surrounding content, placing the notice within the natural flow of the transaction. *Id.*

Like the 2024 Terms of Use to which Plaintiffs I.P. and R.L. agreed, the 2018 and 2021 Terms to which Plaintiffs N.G. and R.S. consented also contain an unambiguous agreement to arbitrate. The beginning of the 2018 and 2021 Terms specify in bold font that consumers agree to "resolving disputes via binding arbitration," Parekh Decl., Exs. D & E at 1, and the Dispute Resolution section states that "any and all disputes or claims that have arisen or may arise between you and us shall be resolved exclusively through final and binding arbitration. . . ." *Id.*, Ex. D at 8, Ex. E at 4. Plaintiffs did not opt out, *id.* ¶ 17, and instead accessed Walgreen's services by signing up for a digital account (checking the box to signal "I read and agree to the Walgreens Terms of Use") and then by scheduling a vaccine appointment online later on. Parekh Decl. ¶¶ 9–10. The arbitration agreement in the 2018 Terms and in the 2021 Terms is sufficiently conspicuous to put reasonable consumers, like Plaintiffs N.G. and R.S., on notice of the agreement to arbitrate and Plaintiffs provided their consent thereto. Accordingly, Plaintiffs N.G. and R.S. entered into a binding agreement to arbitrate their claims.

## II. THE SCOPE OF THE ARBITRATION AGREEMENT IS RESERVED FOR THE ARBITRATOR, BUT ENCOMPASSES PLAINTIFFS' CAUSES OF ACTION IN ALL EVENTS.

The Court can, and should, grant the Motion due to the existence of a valid arbitration agreement alone. To resolve the Motion, the Court does not need to, and indeed lacks authority to, decide the arbitration agreement's scope because the parties delegated that issue to the arbitrator.

Parties may agree by contract to "delegate threshold arbitrability questions to the arbitrator," as long as the contract clearly and unmistakably does so. *Schein, Inc.*, 586 U.S. at 69. When there is such a delegation, "a court possesses no power to decide the arbitrability issue." *Id.* at 68. California law is in accord. *See, e.g.*, *Rodriguez v. Am. Techs., Inc.,* 136 Cal. App. 4th 1110, 1123 (2006); *Aanderud v. Superior Court*, 13 Cal. App. 5th 880, 891 (2017). Delegation of this authority to an arbitrator need not appear in the arbitration agreement itself, but may instead be done through incorporation of AAA or NAM rules requiring the arbitrator to determine the scope of the arbitration clause. *See, e.g.*, *Kahl v. Plentyoffish Media ULC*, No. 23-cv-00985-AGT, 2023 U.S. Dist. LEXIS 103055 (N.D. Cal. June 13, 2023) (holding that questions concerning the formation and validity of the arbitration agreement were for the arbitrator under a delegation provision containing NAM rules); *Rodriguez*, 136 Cal. App. 4th at 1123 ("By incorporating [AAA rules] into their agreement, the parties clearly evidenced their intention to accord the arbitrator the authority to determine issues of arbitrability.").

Here, whether the 2018 Terms, the 2021 Terms, or the 2024 Terms, Plaintiffs and Walgreen agreed to delegate arbitrability issues to the arbitrator by incorporating by reference the rules and procedures of AAA and NAM. In the 2018 and 2021 Terms, the parties expressly agreed that the arbitration shall be conducted by AAA and under its rules and procedures. Parekh Decl., Ex. D at 8, Ex. E at 4-5. In the 2024 Terms, the parties expressly agreed that the arbitration shall be conducted by NAM and under its rules and procedures. *Id.*, Ex. B at 3. The parties thus incorporated by reference the AAA rules into the 2018 and 2021 Terms and the NAM rules into the 2024 Terms. With respect to the AAA rules, both in 2018 and 2021, the AAA rules provided that the arbitrator shall have the power to rule on the ***existence, scope, or validity*** of the arbitration agreement. AAA Consumer Arbitration Rules, R-14(a): "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the

existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[1][2] The NAM rules, incorporated into the 2024 Terms, also delegates to the arbitrator the "authority to determine . . . any issue regarding the ***validity, existence, formation, or scope of the agreement*** under which Arbitration is being sought . . . ." NAM, Comprehensive Dispute Resolution Rules and Procedures, R-17(b) (emphasis added).[3] The parties thus agreed that any issues regarding the validity, existence, or scope of the arbitration provision are delegated to the arbitrator, and thus, the Court "possesses no power to decide the arbitrability issue." *Henry Schein, Inc.*, 586 U.S. at 68.

Even if the Court were to address the question of arbitrability (it should not), the parties' arbitration agreement covers Plaintiffs' causes of action here in any event. California law is clear that "doubts as to the scope of an agreement to arbitrate are to be resolved in favor of arbitration." *Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 705 (2010); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Therefore, "arbitration agreements should be liberally interpreted, and arbitration should be ordered unless the agreement clearly does not apply to the dispute in question." *Vianna v. Doctors' Mgmt. Co.*, 27 Cal. App. 4th 1186, 1189-1190 (1994) (finding plaintiff's claim covered by an agreement to arbitrate "any dispute" over contract terms).

Here, Plaintiffs' claims fall squarely within the scope of the arbitration agreements in the Terms. The 2018 and 2021 Terms specify that Plaintiff and Walgreen "each agree that *any and all disputes* or claims that have arisen or may arise between you and us shall be resolved exclusively through final and binding arbitration. . . ." Parekh Decl., Ex. D at 8, Ex. E at 4 (emphasis added). The 2024 Terms similarly apply to "*any dispute* between [Plaintiffs] and Walgreens . . .." *Id.*, Ex. B at 1 (emphasis added). The 2024 Terms go on to state: "The informal resolution and binding individual arbitration requirements in this

---

[1] The Court may take judicial notice of the AAA and NAM rules under California Evidence Code § 452(g) and (h).

[2] The AAA rules have been updated as of May 1, 2025. In the event a claim is filed with the AAA regarding Plaintiffs' dispute, the current 2025 version will govern, which likewise requires that all issues of arbitrability be decided by the arbitrator and not the Court. AAA Consumer Arbitration Rules, R-7(a).

[3] The NAM rules have been updated as of December 16, 2025. In the event a claim is filed with NAM regarding Plaintiffs' dispute, the current 2025 version will govern, which likewise requires that all issues of arbitrability be decided by the arbitrator and not the Court. NAM, Comprehensive Dispute Resolution Rules and Procedures, R-17(b).

Section II apply to *all Disputes* between you and Walgreens," and defines the term "Dispute" as "*any dispute, claim, or controversy* . . .whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory . . . irrespective of whether the Dispute relates to the Services or to your experiences in or purchases from any Walgreens physical store." *Id.* at 2 (emphasis added).

The breadth of these provisions—"any dispute," "any and all disputes," "all Disputes," and "any dispute, claim, or controversy"—clearly encompasses Plaintiffs' claims here. The Complaint asserts thirteen causes of action including for invasion of privacy and negligence, among others. *See generally* Compl. Each cause of action stems from Plaintiffs' allegations that Walgreen employed website tracking practices to transmit Plaintiffs' private information after scheduling a vaccination online. *See id.* ¶¶ 1-14. But no matter the nature of the dispute, the parties' arbitration agreement requires that ***any and all*** disputes between them be resolved exclusively through binding individual arbitration. Parekh Decl., Exs. B, D, & E; *see, e.g.*, *Estrella v. Freedom Fin.,* No. C 09-03156-SI, 2011 WL 2633643, at *5 (N.D. Cal. July 5, 2011) (ordering arbitration of UCL and CLRA claims where arbitration clause covered "any controversy, claim or dispute"); *Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677, 684 (2000), *as modified* (Sept. 7, 2000) (reversing denial of motion to compel arbitration and holding that an agreement requiring arbitration of "*any* problem or dispute" encompassed all of plaintiff's claims).

## III. THE COURT SHOULD STAY THIS CASE PENDING RESOLUTION OF THE ARBITRATION.

The Supreme Court held that ["w]hen a district court finds that a lawsuit involves an arbitrable dispute and a party has requested a stay of the court proceeding pending arbitration, § 3 [of the FAA] compels the court to issue a stay." *Smith v. Spizzirri*, 601 U.S. 472, 472 (2024). Here, the only requirements for the Court to compel arbitration and stay the case pending arbitration are met—the parties entered into a valid arbitration agreement—and Walgreen has sought a stay of proceedings through this Motion. The Court should thus stay further proceedings in this action pending conclusion of the arbitration.

## CONCLUSION

For the foregoing reasons, Walgreen respectfully requests that the Court grant the Motion and enter an order compelling arbitration of Plaintiffs' causes of action and staying this proceeding pending resolution of the arbitration.

Dated: June 9, 2026

**SIDLEY AUSTIN LLP**

By: /s/ *Amy P. Lally*

Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9667

*Attorneys for Defendant Walgreen Co.*