Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9662
Facsimile: (310) 595-9501

*Attorney for Defendant Walgreen Co.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

N.G., R.L., R.S., and I.P., *on behalf of themselves and all others similarly situated*,

Plaintiffs,

v.

WALGREEN CO.,

Defendant.

Case No. 3:26-cv-02994-RS

Assigned to: Hon. Richard Seeborg

**DEFENDANT WALGREEN CO.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Date: October 1, 2026
Time: 1:30 p.m.
Location: Courtroom 12, 19th Floor

CLASS ACTION

# TABLE OF CONTENTS


INTRODUCTION ....................................................................................................................1

ARGUMENT ........................................................................................................................1

I. PLAINTIFFS WERE ON NOTICE OF WALGREEN'S TERMS AND UNAMBIGUOUSLY ASSENTED TO THEM. ..........................................................1

A. Plaintiffs R.L. and I.P. Agreed to the 2024 Terms When They Scheduled Their Vaccination Appointments.........................................................................2

B. There is no Genuine Dispute of Material Fact Over R.L. and I.P.'s Agreement to Arbitrate. ..........................................................................................6

C. Plaintiffs N.G. and R.S. Agreed to the 2018 and 2021 Terms When They Created Their Accounts. ..........................................................................................8

1. Walgreen Formed a Contract with N.G. ..............................................................8

2. R.S. and N.G. Manifested Assent to Walgreen's Terms. .......................................9

II. THE ARBITRATOR MUST DECIDE THE SCOPE OF THE ARBITRATION CLAUSE..........9

III. PLAINTIFFS FAIL TO SHOW THE PARTIES' ARBITRATION AGREEMENTS ARE UNCONSCIONABLE. ..........................................................................................10

A. Unconscionability is a Question for the Arbitrator..............................................10

1. Plaintiffs Fail to Adequately Challenge the 2024 Delegation Clause...................10

2. The 2018/2021 Terms Incorporate the AAA Rules, Clearly and Unmistakably Delegating Arbitrability to the Arbitrator. ..........................................................11

B. The 2024 and 2018/2021 Terms Are Not Unconscionable. .......................................12

1. Plaintiffs Fail to Establish Procedural Unconscionability. ....................................12

2. Plaintiffs Fail to Establish Substantive Unconscionability....................................13

C. California's Presumption in Favor of Severance Undermines Plaintiffs' Arguments.......15

D. A Stay is Appropriate Here, Because Plaintiffs' Claims are Fully Intertwined ................15

CONCLUSION ....................................................................................................................15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ahlstrom*, *v. DHI Mortgage Co. Ltd.*,
21 F.4th 631 (9th Cir. 2021) .....10

*Applied Materials, Inc. v. Demaray LLC*,
2020 WL 8515132 (N.D. Cal. Dec. 16, 2020) .....6, 8

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) .....14

*In re BAM Trading Servs. Inc. Sec. Litig.*,
733 F. Supp. 3d 854 (N.D. Cal. 2024) .....11, 12, 14

*Baumeister v. Nouveau Essentials Mktg., LLC*,
2026 WL 2093903 (N.D. Cal. July 21, 2026) .....7

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .....3, 9

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .....11

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) .....13

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .....3, 4, 9

*Cordas v. Uber Technologies, Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017) .....11

*Darnaa, LLC v. Google LLC*,
756 F. App'x 674 (9th Cir. 2018) .....14

*Dean Witter Reynolds, Inc. v. Superior Ct.*,
211 Cal. App. 3d 758 (1989) .....12

*Emelyanenko v. Strafach*,
2024 WL 4336522 (N.D. Cal. Sept. 27, 2024) .....6, 8

*Fisher v. MoneyGram Int'l, Inc.*,
66 Cal. App. 5th 1084 (2021) .....14

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) .....3, 8

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) ....................2, 3, 4

*Guadagno v. E*Trade Bank*,
592 F. Supp. 2d 1263 (C.D. Cal. 2008) ....................6

*Han v. Mobil Oil Corp.*,
73 F.3d 872 (9th Cir. 1995) ....................14

*Hansen v. LMB Mortg. Servs., Inc.*,
1 F.4th 667 (9th Cir. 2021) ....................7

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024) ....................13

*Herzog v. Superior Court*,
101 Cal. App. 5th 1280 (2024) ....................5

*Hong v. StubHub, Inc.*,
2024 WL 4720924 (C.D. Cal. Sept. 9, 2024) ....................5

*Hooper v. Jerry Insurance Agency, LLC*,
675 F. Supp. 3d 1027 (N.D. Cal. 2023) ....................4

*Houtchens v. Google LLC*,
649 F. Supp. 3d 933 (N.D. Cal. 2023) ....................7

*In re Juul Labs, Inc., Antitrust Litig.*,
555 F. Supp. 3d 932 (N.D. Cal. 2021) ....................7, 8

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ....................2

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011) ....................15

*Linder v. Golden Gate Bridge, Highway & Transp. Dist.*,
2015 WL 4623710 (N.D. Cal. Aug. 3, 2015) ....................9

*MacClelland v. Cellco P'ship*,
609 F. Supp. 3d 1024 (N.D. Cal. 2022) ....................15

*MacDonald v. Rocket Mortgage LLC*,
2024 WL 5200480 (D. Ariz. Dec. 23, 2024) ....................5

*McCormack v. Marriott Ownership Resorts, Inc.*,
2018 WL 4242098 (S.D. Cal. Sept. 5, 2018) ....................15

*Namisnak v. Uber Techs., Inc.*,
315 F. Supp. 3d 1124 (N.D. Cal. 2018) ....................8

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ....................3

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ....................2, 9

*Palomino v. Facebook, Inc.*,
2017 WL 76901 (N.D. Cal. Jan. 9, 2017) ....................14

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ....................9, 11

*Pinela v. Neiman Marcus Group, Inc.*,
238 Cal. App. 4th 227 (2015) ....................14

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
55 Cal. 4th 223 (2012) ....................6

*Ramirez v. Charter Commc'ns, Inc.*,
16 Cal. 5th 478 (2024) ....................15

*Ronderos v. USF Reddaway*,
114 F.4th 1080 (9th Cir. 2024) ....................14

*S.S. by & through Stern v. Peloton Interactive, Inc.*,
566 F. Supp. 3d 1019 (S.D. Cal. 2021) ....................8

*Sanchez v. Valencia Holding Co., LLC*,
61 Cal. 4th 899 (2015) ....................13

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) ....................6

*Singh v. Payward, Inc.*,
2023 WL 5420943 (N.D. Cal. Aug. 22, 2023) ....................12

*Slaviero v. Baby List, Inc.*,
2026 WL 1097746 (N.D. Cal. Apr. 22, 2026) ....................9, 11, 12, 13

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016) ....................14

*Wayne v. Staples, Inc.*,
135 Cal. App. 4th 466 (2006) ....................12

*Wilkins v. Cruise, LLC*,
121 Cal. App. 5th 927 (2026) ....................5

*Wray v. Humble Bundle, Inc.*,
824 F. Supp. 3d 868 (N.D. Cal. 2025) ....................12, 13

**Statutes**

Cal. Civ. Code § 1580 .......... 5

**Other Authorities**

47 CFR § 64.1200(f)(9) .......... 3

Fed. R. Evid. 602, 901 .......... 7

## INTRODUCTION

Plaintiffs cannot substitute rhetoric for evidence. Plaintiffs dress their arguments in polished prose and an abundance of case citations, but neither can obscure the fact underneath: all four Plaintiffs consented to arbitrate their claims. The evidence is straightforward. Each Plaintiff completed an online transaction presenting a clear and conspicuous clickwrap agreement that expressly informed the user that proceeding constituted agreement to Walgreen's Terms.[1] And each Plaintiff necessarily affirmatively assented to those Terms, whether by creating a walgreens.com account (as to N.G. and R.S.) or scheduling a vaccination appointment (as to R.L. and I.P.).

Unable to offer evidence to the contrary, Plaintiffs simply say that they do not remember these agreements. That is not sufficient to oppose Walgreen's Motion. They otherwise unsuccessfully try to manufacture a factual dispute by attacking the sufficiency of Walgreen's evidence, which establishes the web flow for each Plaintiff's transaction, the disclosures each Plaintiff was shown in the web flow, and each Plaintiff's assent to the terms of the transaction. Plaintiffs do not show or argue that any Plaintiff bypassed the required assent process, completed a transaction without agreeing to Walgreen's Terms or encountered a different disclosure or interface. Nor do they affirmatively dispute that the web flows Walgreen has presented as evidence are correct. Instead, their (nearly identical) declarations say that they do not remember what they saw or clicked, which has never been sufficient to prevent compelled arbitration in this District. Strip away the artful advocacy and Plaintiffs cannot dispute that they were reasonably on notice of Walgreen's Terms—including the arbitration agreements—and assented to them. Nor can Plaintiffs demonstrate that the agreements are unconscionable. The Motion should be granted.

## ARGUMENT

### I. PLAINTIFFS WERE ON NOTICE OF WALGREEN'S TERMS AND UNAMBIGUOUSLY ASSENTED TO THEM.

Walgreen's vaccine-scheduling page presented an enforceable clickwrap agreement providing conspicuous notice of the Terms next to a non-pre-checked checkbox. By checking that box, Plaintiffs unambiguously assented to the Terms, including arbitration.

[1] Capitalized terms not defined herein have the meaning defined in the Motion.

**A. Plaintiffs R.L. and I.P. Agreed to the 2024 Terms When They Scheduled Their Vaccination Appointments.**

Plaintiffs R.L. and I.P. do not dispute, in their declarations or brief, that when they scheduled vaccine appointments in 2024 using the walgreens.com vaccination scheduling page, they each clicked "By checking this box, I agree to receive automated text messages . . . I also agree to the Walgreens Terms of Use and Privacy Policy." *See, e.g.*, R.L. Decl. ¶ 7 ("I recall a checkbox near the end of the form . . . ."); Parekh Decl. Ex. A. Plaintiffs, even though they expressly admit they remember seeing the checkbox, nonetheless argue that Walgreen did not provide reasonably conspicuous notice of an agreement to arbitrate. Plaintiffs' Opposition to Walgreen's Motion to Compel Arbitration and Stay Proceedings, ("Opp.") (ECF No. 30) at 8–11 (§ II.A). That is wrong.

Plaintiffs agreed to Walgreen's Terms through what the Ninth Circuit has called the "clearest manifestation" of assent: a clickwrap agreement. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 514 (9th Cir. 2023) (citation omitted). When scheduling a vaccine appointment, Plaintiffs checked the box agreeing to Walgreen's Terms. Declaration of Riz Khurshid ("Khurshid Decl.") ¶¶ 4, 7–8, Ex. A. That affirmative act constitutes assent as a matter of law. *See, e.g., Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1020 (9th Cir. 2024) (finding assent and notice reasonably conspicuous where "[d]irectly beneath the operative Play button is the following: By tapping 'Play' I agree to the Terms of Service").

Ignoring such authorities, Plaintiffs rely heavily on *Godun v. JustAnswer LLC*, 135 F.4th 699 (9th Cir. 2025), but *Godun* itself confirms that Walgreen's interface is enforceable. Opp. at 9:12–13. In *Godun*, users "were not required to separately indicate that they had read or agree with those terms." 135 F.4th at 708. Instead, assent checkboxes were "*pre-checked*, so the parties only needed to click the 'Connect now' button." *Id.* at 707 (emphasis added). The Ninth Circuit expressly stated that if, as here, the boxes were not pre-checked, the website "would have created a 'clickwrap' agreement, and thus would have been presumptively enforceable." *Id.* at 712 n.6. Here, Walgreen's vaccine sign-up does not pre-check any boxes and unlike the "visually 'buried'" text in *Godun*, Walgreen places the Terms in blue text directly below the required checkbox. *See* Parekh Decl. Ex. A; Khurshid Decl. Ex. A. Also, unlike the ambiguous meaning of "Connect Now" in *Godun*, where there was no indication that selecting that option resulted in an agreement between the parties, here, the disclosure affirmatively states that the parties are reaching an

agreement when the party checks the box. Thus, *Godun* supports Walgreen's Motion.

Equally unavailing is Plaintiffs' attempt to analogize their vaccine scheduling process to *Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025) or *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022), both of which involved sign-in wrap, not clickwrap agreements.[2] *Chabolla* involved a sign-up flow that spanned multiple screens that were cluttered with extraneous images and distracting colors, and multiple action buttons labeled "Continue" and "Redeem now" that did not convey that the user was agreeing to any contractual terms. 129 F. 4th at 1156–59. *Berman* found that the text disclosing the terms was "the antithesis of conspicuous" because it appeared "in a font so small that it is barely legible to the naked eye." *Berman*, 30 F.4th at 856–57.

Walgreen's vaccine scheduling page is nothing like those interfaces. Plaintiffs allege no facts suggesting that the Terms link here was "barely legible to the naked eye." Unlike in *Chabolla*, Plaintiffs were presented with a white and sparsely populated screen with clear language that "By checking this box . . . I also agree to the Walgreens Terms of Use and Privacy Policy." Parekh Decl., Ex. A; Khurshid Decl. Ex. A. This webpage design is precisely the type of presentation courts have enforced as providing reasonably conspicuous notice. *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 926 (N.D. Cal. 2024) (manifestation of assent shown where sign-in screen "'lack[ed] clutter'" and "[t]he design elements used 'a contrasting font color' making the notice legible") (quoting *Keebaugh*, 100 F.4th at 1020–21).

Plaintiffs grasp onto the following phrase out of context—"my consent is not a condition for purchasing the services"—arguing that it "misdescribes the legal significance of the checkbox." Opp. at 9:18–19. Not so. Within context, the relevant sentence reads: "I'm aware that mobile messages and data rates may apply, and that my consent is not a condition for purchasing the services. Reply STOP to opt out." Parekh Decl. Ex. A; Khurshid Decl. Ex. A. This is a legally required statement relating to *call* consent, where someone can choose not to provide call consent. 47 CFR § 64.1200(f)(9). But the following sentence contains no such phrase: it states, "I also agree to the Walgreens Terms of Use and Privacy Policy," along with the prompt "Next" to move forward with the appointment. *Id.* R.L. and I.P. expressly

[2] *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014), likewise does not support Plaintiffs' position as it involved a passive browsewrap and the website provided no notice that completing the transaction constituted assent, nor an affirmative checkbox consenting to the Terms. *Id.* at 1178–79.

assented to that agreement, and cite no authority holding that an express manifestation of assent to hyperlinked terms is rendered ineffective merely because the same checkbox also contains a separate TCPA consent disclosure. Their cases instead concern interfaces that failed to tell the user what action constituted assent or otherwise created ambiguity about the significance of the operative act. *See Godun*, 135 F.4th at 707 (pre-checked "Connect now" button did not constitute unambiguous assent). *Chabolla*, in particular, focused on two key factors not present here: a website that elsewhere advertised a "no commitments" transaction, 129 F.4th at 1155, and the fact that there was not a clearly disclosed manifestation of assent (via a separate checkbox).

Far from misdescribing the legal significance of the check box, Walgreen's disclosure provides instructions for opting out of SMS messaging after users check the box to agree. *See* Parekh Decl. Ex. A at 2. Similarly, the hyperlinked Terms provide instructions for how users can opt out of arbitration after checking the box to agree to same. *See* Parekh Decl. Ex. B at 1, 6. Notably, none of the Plaintiffs exercised their option to opt out of the arbitration agreement. Parekh Decl. ¶ 17.

Plaintiffs themselves point out that a single act (checking a box) is capable of accomplishing two purposes (consent to SMS communications and assent to Terms) so long as the interface objectively communicates each purpose. Opp. at 11–14 (citing *Hooper v. Jerry Insurance Agency, LLC*, 675 F. Supp. 3d 1027, 1037 (N.D. Cal. 2023)). In *Hooper*, the court found sufficient a disclosure stating that, by clicking "Continue," the user agreed to receive a text message verification code, updates about defendant's products, and accept the terms of use and privacy policy—all through the same click:




675 F. Supp. 3d at 1037. The court likewise enforced arbitration in *Moyer v. Chegg* in which the account

creation page also included a privacy disclosure under the "[c]reate account" button and language stating "[b]y clicking Create account: you agree to the Terms of use and Privacy Policy." 2023 WL 4771181, at *5 (N.D. Cal. July 25, 2023); *see also MacDonald v. Rocket Mortgage LLC,* 2024 WL 5200480, at *5 (D. Ariz. Dec. 23, 2024) (finding "Communication Consent" notice sufficiently conspicuous where the hyperlinked "Terms of Use" was visible when the user performed the "crucial click").

Plaintiffs' reliance on *Herzog v. Superior Court*, 101 Cal. App. 5th 1280, 1286 (2024) is misplaced. The defect in *Herzog* was not that a single checkbox carried more than one legal consequence; it was that the defendant expressly defined—and limited—the significance of checking the boxes. The disclosure told users that, "*[b]y ticking the boxes below*," they were consenting to the collection and use of their "*personal information, including . . . sensitive health information*" to be "*shared consistently with the Privacy Policy and Terms*." *Id.* at 1289–90. The disclosure did not advise that ticking the box was agreement to the Terms. The court therefore concluded that a reasonable user would understand the Terms of Use to govern *solely* the "management of their personal information," not that the same click also manifested assent to the full scope of the terms. *Id.* at 1299. Courts in California have repeatedly distinguished *Herzog* on those highly unique facts not present here. *See, e.g., Wilkins v. Cruise, LLC*, 121 Cal. App. 5th 927, 944 (2026) (distinguishing *Herzog* because *Herzog's* disclosure explicitly focused on privacy concerns and "thereby created an ambiguity such that a reasonably prudent user would believe the terms pertained only to 'privacy rights and the management of the user's personal information.'"); *Hong v. StubHub, Inc.*, 2024 WL 4720924, at *6–7 (C.D. Cal. Sept. 9, 2024) (distinguishing *Herzog* where there was "no misleading description" of the terms and unlike in *Herzog*, the notice expressly stated that clicking the purchase button constituted agreement to the terms).

Unlike in *Herzog*, here, after providing the text message disclosure, the disclosure distinctly and separately, in a new sentence, notes the additional agreement: "I *also* agree to the Walgreen's Terms of Use and Privacy Policy." Parekh Decl. Ex. A; Khurshid Decl. Ex. A (emphasis added in both). The appointment-related text message disclosure does not purport to describe, define, or limit the scope of Walgreen's Terms or Privacy Policy; indeed, they do not reference those agreements at all. Plaintiffs were on notice of the Terms that were separate from the text message disclosure. Thus, under Cal. Civ. Code

§ 1580, the parties "agree[d] upon the same thing" regardless of whether plaintiffs now suggest that they did not read or review the Terms. *See Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008) ("[A] party may be bound by a 'clickwrap' agreement if the terms are clear and acceptance is unambiguous, regardless of whether he actually reads them."); *see also Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) ("[a]n arbitration clause within a contract may be binding on a party even if the party never actually read the clause").

Nor do the footnotes below the checkbox and "Next" button negate assent. Opp. at 10:7-24. Plaintiffs argue that a "reasonable consumer" would think that the two footnotes (one warning of vaccine limitations and another of the risk of unencrypted emails) are the entirety of the "Terms of Use" to which they agreed by checking the box. Opp. at 10:13-17. But none of the Plaintiffs declared that they held this understanding. Nor did any declare to reading anything on the website below the "Next" button. To the contrary, each Plaintiff declared that they understood they were agreeing to the text accompanying the checkbox, specifically the SMS terms, and that they did not read the hyperlink labeled Terms, but they do not disclaim seeing the hyperlink to the Terms because they cannot. Decl. of R.L. at ¶¶ 7–8; Decl. of I.P. at ¶¶ 6–7. The Terms hyperlink is embedded within the disclosure accompanying the very checkbox R.L. and I.P. selected. Indeed, the footnotes Plaintiffs now contend would necessarily capture a user's attention are similar to the type of text which the court in *Sellers*—on which Plaintiffs rely just one page earlier, Opp. at 9:14–16—found to be inconspicuous because it fell outside the area where the consumer's attention was focused. *See Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 477–82 (2021) ("the text appears below the white payment box, outside the user's primary area of focus . . . .").

### B. There is no Genuine Dispute of Material Fact Over R.L. and I.P.'s Agreement to Arbitrate.

Plaintiffs attempt to manufacture a factual dispute where none exists. Walgreen has submitted affirmative evidence, now supplemented,[3] establishing the web flow Plaintiffs used to schedule vaccination appointments in September 2024 and that R.L. and I.P. checked the box agreeing to

[3] "[E]vidence submitted with a reply brief is not new evidence when it is submitted to rebut arguments raised in the opposition brief." *Applied Materials, Inc. v. Demaray LLC*, 2020 WL 8515132, at *1 (N.D. Cal. Dec. 16, 2020); *see Emelyanenko v. Strafach*, 2024 WL 4336522, at *5 (N.D. Cal. Sept. 27, 2024) (rejecting challenges to supplemental declarations and explaining "Defendants may, as here, properly respond to arguments raised in an opposition to a motion on reply").

Walgreen's Terms. Parekh Decl. Ex. A; Supplemental Declaration of Vishal Parekh ("Parekh Supp. Decl.") ¶ 5;[4] Khurshid Decl. ¶¶ 7–8. Plaintiffs, by contrast, offer no evidence that they did not check the box. Their declarations instead are limited to vagaries that they do not remember the relevant screen or reading the Terms R.L. Decl. ¶¶ 7–9; I.P. Decl. ¶¶ 6–8. Plaintiffs' asserted lack of recollection is insufficient to create a genuine dispute in the face of Walgreen's affirmative evidence that they checked the box and agreed to the Terms. *See* Opp. at 15:10–12; *Baumeister v. Nouveau Essentials Mktg., LLC*, 2026 WL 2093903, at *2 (N.D. Cal. July 21, 2026) (denying discovery where "Plaintiff offer[ed] no other evidence to support her contention that she never signed up for marketing messages through [defendant's] website" and failed to "contest[] any aspect of [defendant's] affidavit").

In *Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 937–42 (N.D. Cal. 2023), the court rejected plaintiffs' "bare assertion that they d[id] not recall" checking the box or that they "may not have read" the terms where declaration evidence established that "all users who signed up for a Fitbit account were required to agree to Fitbit's Terms of Service during the sign-up process." *See also In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932, 946–49 (N.D. Cal. 2021) (rejecting as "unpersuasive" plaintiffs' lack-of-recollection arguments where defendant submitted declaration testimony establishing that an affirmative check box was present on each plaintiff's actual registration date, notwithstanding the absence of Wayback Machine screenshots from those precise dates). In *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670–72 (9th Cir. 2021), the case Plaintiffs principally rely on, the plaintiff *affirmatively disputed* whether he clicked the submit button and agreed to the Terms of Use. There is no dispute here: Walgreen's business records reflect that R.L. and I.P. each checked the box agreeing to Walgreen's Terms of Use, and neither of them affirmatively declares otherwise. Khurshid Decl. ¶¶ 7–8. And although Plaintiffs suggest that vaccinations are a "one-time" transaction distinct from an ongoing relationship under *Chabolla*, their own allegations show otherwise, alleging that they returned for multiple vaccinations as part of an ongoing relationship and service. Compl. ¶¶ 18, 20, 180, 192. Despite Plaintiffs' best efforts, there is no genuine dispute of material fact necessitating discovery, let alone a trial.

[4] Walgreen thus cures Plaintiffs' Rule 602 and 901 objections by establishing Parekh's personal knowledge of, and foundation for testifying about, the vaccine-scheduling flow. Opp. at 15:11–13.

### C. Plaintiffs N.G. and R.S. Agreed to the 2018 and 2021 Terms When They Created Their Accounts.

As to N.G. and R.S., both Plaintiffs manifested assent to Walgreen's Terms through the required account-creation process, and those Terms provided conspicuous notice of the arbitration provision. Plaintiffs do not dispute formation as to R.S., Opp. at 17, and their challenge as to N.G. fails.

#### 1. Walgreen Formed a Contract with N.G.

Plaintiff N.G.'s argument that she did not form a contract with Walgreen depends entirely on attacking Walgreen's declarant who attested to the 2018 interface,. Opp. at 17–18. But none of Plaintiffs' cited authorities establishes that "a characterization of an interface (which the declarant does not produce) cannot establish reasonably conspicuous notice or unambiguous assent." Opp. at 18:4–6. Neither *Namisnak* nor *Ghazizadeh* requires a movant to produce the precise historical screenshot of the sign-up flow. *See Namisnak v. Uber Techs., Inc.*, 315 F. Supp. 3d 1124, 1127–30 (N.D. Cal. 2018) (Seeborg, J.) (compelling arbitration based on additional information provided concerning historical registration process despite absence of screenshot depicting precise interface plaintiff encountered); *Ghazizadeh*, 737 F. Supp. 3d at 934–35 (finding evidence insufficient where declarant merely characterized earlier interface as "similar" to later version *without describing the earlier interface's required steps* for manifestation of assent) (emphasis added); *see also In re Juul,* 555 F. Supp. 3d at 946–49 (rejecting formation challenge despite absence of Wayback screenshots from plaintiffs' precise registration dates).

In any event, Walgreen states how the 2018 account-creation process was similar to the 2021 process: the interface's required steps are the same in each, including that the 2018 process required users to affirmatively check a box acknowledging agreement to the Terms. Parekh Supp. Decl. ¶¶ 3–4; *see Emelyanenko*, 2024 WL 4336522, at *5 (finding declarations proper on reply that "respond to arguments raised in an opposition"); *Applied Materials*, 2020 WL 8515132, at *1 (same). *S.S. by & through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1045–46 (S.D. Cal. 2021), is directly on point. There, a supplemental declaration based on personal knowledge "remedied" the absence of contemporaneous screenshots by establishing the assent mechanism required two years earlier. *Id.* Parekh's supplemental declaration also confirms the affirmative assent required when N.G. created her account in 2018.

**2. R.S. and N.G. Manifested Assent to Walgreen's Terms.**

Plaintiffs' Opposition focuses heavily on the purported context of the transaction for I.P. and R.L., Opp. at 11:8–18, but conspicuously ignores that same consideration for R.S. and N.G. The reason is clear. Where, as here, the nature of the agreement involves an ongoing relationship—such as requiring users to create an account—users should reasonably expect to be bound by terms and conditions, including an arbitration provision. *See Oberstein*, 60 F.4th at 517. Indeed the "continuing relationship" here is exactly the type envisioned in *Chabolla*. 129 F.4th at 1155–58 ("When a user enters into an agreement with a website that contemplates some sort of continuing relationship, that user should expect the relationship to be governed by some contractual terms."). Plaintiff N.G. confirms that she created a walgreens.com account "for everyday purposes such as online shopping." N.G. Decl. ¶ 4.

The presentation of the Terms likewise supports a finding of reasonably conspicuous notice. As this Court recently recognized in *Slaviero*, "[t]he notice provided by [Walgreen] here is much more like those in *Oberstein* and *Patrick*[5] than those in *Chabolla* or *Berman*." *Slaviero v. Baby List, Inc.*, 2026 WL 1097746, at *4 (N.D. Cal. Apr. 22, 2026) (Seeborg, J.). Like the interfaces found sufficient in those cases, Walgreen presented the Terms on an uncluttered account-creation page in clear, legible text, with the "Terms of Use" displayed as a contrasting blue hyperlink immediately adjacent to the checkbox expressly acknowledging agreement to those Terms. Parekh Decl. Ex. A; Khurshid Decl. Ex. A; *see Oberstein*, 60 F.4th at 515–17; *Patrick*, 93 F.4th at 477. The notice was thus "close enough to capture a reasonable user's gaze," *Slaviero*, 2026 WL 1097746, at *4, and bears none of the defects that rendered the interfaces in *Chabolla* and *Berman* insufficient. In sum, the Terms were conspicuous, and Plaintiffs unambiguously manifested assent by checking the box. Parekh Decl., Ex. A; Parekh Supp. Decl. ¶¶ 3–4.

## II. THE ARBITRATOR MUST DECIDE THE SCOPE OF THE ARBITRATION CLAUSE.

Plaintiffs argue that because they dispute contract formation, on the grounds that Plaintiffs never saw or reviewed the Terms, any scope issues should be decided by the Court. Opp. at 8:10–11.[6] Plaintiffs

[5] *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (finding conspicuous notice where terms were hyperlinked in "bright green—contrasted against the surrounding white background and adjacent black text" and manifestation of assent where button clearly indicated that consumer agreed to terms of use).

[6] Plaintiffs do not dispute that their claims fall within the scope of the Arbitration Agreements and thus waive the issue. *See Linder v. Golden Gate Bridge, Highway & Transp. Dist.*, 2015 WL 4623710, at *3

rely on *Ahlstrom*, *v. DHI Mortgage Co. Ltd.*, 21 F.4th 631 (9th Cir. 2021), Opp. at 7, where the arbitration agreement purported to arise from an employer-employee relationship that did not exist because plaintiff was never employed by the employer. *Id.* at 633. But Plaintiffs assented to Walgreen's Terms and the arbitration agreement, as explained *supra*. Where, as here, formation is established, *Ahlstrom* itself recognizes that all remaining arbitrability questions—including scope and unconscionability—must be decided by the arbitrator under a valid delegation clause. *Id.* at 633–35.

## III. PLAINTIFFS FAIL TO SHOW THE PARTIES' ARBITRATION AGREEMENTS ARE UNCONSCIONABLE.

### A. Unconscionability is a Question for the Arbitrator.

Walgreen's Terms at issue delegate threshold questions of validity and enforceability to the arbitrator. Plaintiffs' scattershot attacks on the arbitration agreement do not disturb that delegation.

#### 1. Plaintiffs Fail to Adequately Challenge the 2024 Delegation Clause.

Plaintiffs do not dispute that the 2024 Terms expressly delegate threshold questions of arbitrability to the arbitrator. Opp. at 15:27; *see* Parekh Decl., Ex. B at 2 ("The arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether any part of the Terms are unconscionable."). That delegation must be enforced unless Plaintiffs specifically challenge the delegation provision itself. *See Rent-A-Ctr.*, 561 U.S. at 72–74 (distinguishing challenges to the delegation provision, which courts resolve, from challenges to the arbitration agreement as a whole, which are for the arbitrator); *Bielski*, 87 F.4th at 1009–11 (same).

Plaintiffs insist they have done so. Opp. at 15:28 ("Plaintiffs direct this challenge specifically at the delegation provision."). But their Opposition makes only, at most, a delegation-specific argument as to procedural unconscionability. *Id.* at 16 (arguing the delegation provision was inconspicuous). Their substantive challenge is not directed at delegation at all. *See* Opp. at 16:20 ("*The Terms* are equally substantively unconscionable.") (emphasis added). Plaintiffs never explain why any of the *Terms*, rather than the *delegation clause*, make it unconscionable for the arbitrator to decide arbitrability. That omission is dispositive. *See Holley-Gallegly*, 74 F. 4th 997, 1002 (9th Cir. 2023), (explaining that a party relying

---

(N.D. Cal. Aug. 3, 2015) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment").

on provisions outside the delegation clause "must *explain how those provisions make the fact of an arbitrator deciding arbitrability unconscionable*") (emphasis added); *In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F. Supp. 3d 854, 873 (N.D. Cal. 2024) ("Plaintiff's arguments all go to the unconscionability of the Terms of Use as a whole, and maybe also the Arbitration Agreement, and thus do not invalidate the arbitrator deciding arbitrability in the first instance pursuant to the delegation clause."). Plaintiffs cannot avoid delegation by relabeling objections to Walgreen's arbitration procedures as objections to the delegation clause.

### 2. The 2018/2021 Terms Incorporate the AAA Rules, Clearly and Unmistakably Delegating Arbitrability to the Arbitrator.

As to the 2018 and 2021 Terms, Plaintiffs argue that a clause incorporating the American Arbitration Association ("AAA") rules is unenforceable because they are not sophisticated enough to be bound by such language. Opp. at 18–20. But *Brennan* expressly cautioned that its holding "should not be interpreted to require that the contracting parties be sophisticated" and "does not foreclose" application to "unsophisticated parties or to consumer contracts." 796 F.3d at 1130. And *Patrick* did not hold otherwise; it expressly left that question open because the plaintiffs there "offered no evidence concerning their sophistication or lack thereof." 93 F.4th at 481–82.

Plaintiffs rightfully, but unpersuasively, attempt to distinguish this Court's decision in *Cordas*, but conspicuously ignore this Court's recent decision in *Slaviero*. 2026 WL 1097746, at *6; Opp. at 20:12–16. First, *Cordas* expressly considered *Brennan*'s reservation on unsophisticated parties and held that incorporation of the AAA rules still delegated arbitrability. *Cordas v. Uber Technologies, Inc.*, 228 F. Supp. 3d 985 (N.D. Cal. 2017). *Slaviero* held that, even if sophistication is relevant, the allegedly unsophisticated party bears the burden of producing evidence that he or she "could not grasp the mechanism of compelling arbitration of arbitrability." 2026 WL 1097746, at *6. Plaintiffs have not provided any evidence to suggest they "could not grasp" the delegation mechanism. To the contrary, both are college-educated professionals: N.G. holds a master's degree in journalism and worked as a project manager, while R.S. holds an undergraduate degree in journalism, worked as a special-education teacher, continues to work as a substitute teacher, and holds two teaching credentials. N.G. Decl. ¶ 3; R.S. Decl. ¶ 3. Their statements that they lack legal training and were unfamiliar with the AAA do not establish "that

they could not grasp the mechanism of compelling arbitration of arbitrability used here." *Slaviero*, 2026 WL 1097746, at *6.[7]

### B. The 2024 and 2018/2021 Terms Are Not Unconscionable.

Once the Court finds a valid delegation provision, challenges directed at the arbitration agreement as a whole, including its substantive terms, are for the arbitrator to resolve. *See supra* III.A.1. Nonetheless, without waiver of its arbitration rights and right to have this issue decided by the arbitrator, Walgreen addresses Plaintiffs' erroneous unconscionability arguments here.

#### 1. Plaintiffs Fail to Establish Procedural Unconscionability.

Plaintiffs' procedural attack rests on two theories: oppression and surprise. Opp. at 22:10–12. Neither applies here. First, Plaintiffs contend that the 2018, 2021, and 2024 Terms were adhesive. Opp. at 16, 22. But adhesion alone does not establish oppression, and adhesion arguments have no place here, where plaintiffs had many other options for their vaccination services. *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 482 (2006) ("There can be no oppression establishing procedural unconscionability, even assuming unequal bargaining power and an adhesion contract, when the customer has meaningful choices."). Here, every version of the Terms permitted Plaintiffs to opt out of arbitration; R.L. and I.P. could obtain vaccination services elsewhere; and N.G. and R.S. were not obligated to create walgreens.com accounts (and could terminate membership at any time) to make purchases or otherwise use Walgreen's services. Parekh Decl., Ex. B at 1, Ex. D at 9, Ex. E at 5; *see Dean Witter Reynolds, Inc. v. Superior Ct.*, 211 Cal. App. 3d 758, 768 (1989) ("The meaningfulness of a party's choice is based . . . also on his ability to obtain the goods or services . . . from others.").

Plaintiffs cannot establish surprise either. Although untrue, their contention that the Terms were "never displayed" and "remained behind a hyperlink," Opp. at 16:13, concerns notice, not unconscionability. And while Walgreen "was under no obligation to highlight the arbitration clause of its contract, nor was it required to specifically call that clause to [Plaintiffs'] attention," it did both—

[7] Nor is *Slaviero* an outlier. "[C]ourts in this district have concluded that incorporation of the AAA or JAMS rules is sufficient for a court to find intent to delegate arbitrability, regardless of the parties' sophistication." *Singh v. Payward, Inc.*, 2023 WL 5420943, at *7 (N.D. Cal. Aug. 22, 2023); *see also Wray v. Humble Bundle, Inc.*, 824 F. Supp. 3d 868, 876 (N.D. Cal. 2025) (declining sophistication requirement); *In re BAM*, 733 F. Supp. 3d at 863 (same).

individual arbitration is prominently disclosed in the Terms.[8]

**2. Plaintiffs Fail to Establish Substantive Unconscionability.**

Since Plaintiffs have not established procedural unconscionability, the Court need not reach substantive unconscionability. *See Slaviero*, 2026 WL 1097746, at *5 ("Plaintiffs' arguments as to substantive unconscionability do not render unenforceable the arbitration provision because both substantive and procedural unconscionability must be present in order for a court to find a contract unconscionable, and the agreement here is not procedurally unconscionable.") (cleaned up). But even if the Court considers Plaintiffs' arguments, which it should not given the delegation clause, *Rent-A-Ctr.*, 561 U.S. at 72–74, Plaintiffs cannot show substantive unconscionability either.

As to the 2024 Terms, *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 684–88 (9th Cir. 2024), Opp. at 16–17, involved New Era ADR, a newly formed arbitration provider allegedly employing "novel and unusual procedures," including unilateral retroactive changes, binding bellwether decisions on absent claimants, no discovery, severe page limits, and asymmetric appeal rights, among other harsh provisions. Walgreen's Terms, which designate NAM as the provider, are nothing like that. They bar post-dispute changes that disadvantage the claimant, divide bellwether selections equally, and provide that an arbitrator "shall not be bound by rulings in prior arbitrations involving different Walgreens users." Parekh Decl., Ex. B at 3–6. Moreover, the Terms here toll limitations while coordination proceeds (preserving Plaintiffs' claims) and require mediation "as quickly as practicable." Parekh Decl., Ex. B at 4–5. And if mediation fails to achieve a global resolution, "this arbitration requirement shall no longer apply," and claimants may proceed in court, including on a class basis. *Id*. at 5. As a result, courts have rejected unconscionability challenges to NAM-based arbitration agreements. *See, e.g.*, *Wray*, 824 F. Supp. 3d at 878–80.

Plaintiffs raise three remaining substantive challenges—to the liability cap, the one-year claims period, and the Illinois choice-of-law clause—but each fails to establish unconscionability. These provisions apply irrespective of forum; they are substantive contractual terms, not limitations imposed by arbitration, and thus provide no basis to invalidate the delegation or arbitration provisions. *See Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1034 n.13 (9th Cir. 2022) ("The statute-of-limitations and

---

[8] *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 914 (2015); Mot. at 8–10; Parekh Decl., Ex. B at 1–2, Ex. D at 1, 8, Ex. E at 1, 4.

damages provisions are immaterial at this stage" as Plaintiffs have not "explained how the[y] . . . would hamper [their] ability to arbitrate that question"); *In re BAM*, 733 F. Supp. 3d at 873 (holding plaintiff failed to "explain how the limitation on liability as applied to the delegation clause renders the delegation clause unconscionable"). Even if these provisions bore on the delegation inquiry, none is substantively unconscionable by its own terms.

Plaintiffs mischaracterize the limitation-of-liability provision as a "[z]ero-dollar exculpation." Opp. at 23:5. Such provisions are generally valid in California, *Darnaa, LLC v. Google LLC*, 756 F. App'x 674, 675–76 (9th Cir. 2018), and the Terms expressly defer to applicable law where a limitation is impermissible. Parekh Decl., Ex. B at 12–13; Ex. D at 7–8; Ex. E at 4. California law likewise permits contractual limitations periods, and a 12-month period is generally reasonable. *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995).[9] Moreover, the provision here is bilateral and incorporates California's discovery rule. *See Tompkins v. 23andMe, Inc.,* 840 F.3d 1016, 1032–33 (9th Cir. 2016).

Lastly, choice-of-law provisions are presumptively enforceable where the chosen state has a substantial relationship to the parties, *see Palomino v. Facebook, Inc.*, 2017 WL 76901, at *3 (N.D. Cal. Jan. 9, 2017), and Walgreen is headquartered in Illinois. *Pinela v. Neiman Marcus Group, Inc.,* 238 Cal. App. 4th 227 (2015) does not support Plaintiffs' attempt to recast that choice-of-law argument as a challenge to delegation. Opp. at 21:24–22:1, 24:6–7. There, the choice-of-law provision expressly barred the arbitrator from applying California unconscionability law when deciding arbitrability; here, the 2018/2021 Terms require application of Illinois law to the *substance* of all claims and do not prevent Plaintiffs from arguing that California law governs the threshold arbitrability inquiry. *See* Parekh Decl., Ex. D at 9; Ex. E at 5; *Pinela*, 238 Cal. App. 4th at 243–50.[10] Ultimately, none of Plaintiffs' challenges

[9] *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1105 (2021), is distinguishable because it repeatedly emphasized the reduction of a four-year statutory period to one year. *Ronderos v. USF Reddaway*, 114 F.4th 1080, 1090 (9th Cir. 2024) concerned employment rights, where California imposes heightened scrutiny not present in consumer agreements. *See Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal. 4th 83, 100 (2000) (holding limited to employment arbitration agreements).

[10] Plaintiffs also challenge what they call a one-sided indemnity clause, claiming it lacks the "modicum of bilaterality" discussed in *Armendariz*, 24 Cal. 4th at 116. This is wrong. The concern in *Armendariz* was the lack of bilaterality in the *arbitration scheme* itself, not on the question of remedies. Plaintiffs' challenge is to the commercial terms—which, of course, are standard terms for the violation of terms of use—not to the arbitral forum itself, and thus must be brought to and resolved by the arbitrator.

render the arbitration agreements unconscionable or otherwise unenforceable.

**C. California's Presumption in Favor of Severance Undermines Plaintiffs' Arguments.**

Even if some provision were unconscionable, severance—not invalidation—is appropriate. Each version of the Terms expressly provides for severability. Parekh Decl., Ex. B at 6; *see also id.*, Ex. D at 10, Ex. E at 5. California law likewise directs courts to "liberally sever" when "the illegality is collateral to the contract's main purpose [and] it is possible to cure [] by means of severance. . . ." *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 517 (2024). Anything more would disregard the "emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011). *MacClelland* is not to the contrary. *See* Opp. at 24:19–22 (quoting *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1035–46 (N.D. Cal. 2022)). There, the court refused to sever after cataloguing several substantively unconscionable provisions that together "demonstrate[d] a systematic effort to impose arbitration . . . as an inferior forum." *Id.* Walgreen's Terms share none of those defects.[11] No similar provisions standing alone or in combination are present here, and permeation is not in play.

**D. A Stay is Appropriate Here, Because Plaintiffs' Claims are Fully Intertwined**

Plaintiffs' own argument demonstrates why a stay is warranted: "[a]ll four Plaintiffs challenge the same tracking practices, [and] any claims not compelled to arbitration will remain before this Court." Opp. at 25:6–7. If the Court finds non-arbitrable claims as to particular Plaintiffs (it should not), the claims are fully intertwined with the arbitrable claims and depend on the same factual issues. *See McCormack v. Marriott Ownership Resorts, Inc.*, 2018 WL 4242098, at *6 (S.D. Cal. Sept. 5, 2018) (staying non-arbitrable claim where the "factual issues that will be resolved in arbitration clearly 'bear upon [the instant] case,'" making a stay "in the interest of efficiency" to "avoid duplicative proceedings as to the same issues" (citation omitted)).

## CONCLUSION

For the foregoing reasons, Walgreen respectfully requests that the Court grant the Motion in its entirety and stay this proceeding pending resolution of the arbitration.

[11] The coordinated-filing provision *expressly tolls* all applicable limitations periods from receipt of a compliant Notice of Dispute until the case may be filed in arbitration or court. Parekh Decl., Ex. B at 4.

Dated: August 28, 2026

**SIDLEY AUSTIN LLP**

By: /s/ *Amy P. Lally*

Amy P. Lally
*Attorney for Defendant Walgreen Co.*